UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,

Case No. 1:23-cr-138

v.

Hon. Hala Y. Jarbou
Chief U.S. District Judge

DERRICK SMITH, JR.,

          Defendant.

_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Derrick Smith Jr. walked into a Lansing, Michigan convenience store carrying an assault rifle. He pointed the rifle at a cashier, left the store, then pointed the gun at a car driving in the street. He did so despite his extensive felony record. Based on Defendant's criminal history and the brazenness of his offense, the government requests the Court fashion a sentence to reflect the threat he poses to the public.

**Factual Background**

On September 9, 2023, police responded to a Save-On Market in Lansing, Michigan after a witness saw Defendant raise an assault rifle and say, "Everybody's gonna die!" (R.28: PSR, PageID.64, ¶ 10.) Police arrived and saw one of Defendant's associates place the rifle through the front passenger window of an SUV. (*Id.* at ¶ 9.) Officers recovered a loaded 5.56 caliber Smith & Wesson M&P 15 equipped with a 30-round magazine from the vehicle. (*Id.*, PageID.66, ¶ 15.) Officers also found a black Taurus G3 pistol underneath the driver's seat. (*Id.*, PageID.64, ¶ 9.)

City and store surveillance cameras captured the incident.[1] Video shows Defendant exit an SUV with four others while carrying the rifle. (Government Exhibit 3 at 2:12.) Defendant entered the store carrying the gun, then one of his associates takes the rifle and props it near a display case. (R:28: PSR, PageID.65, ¶ 12; Government Exhibit 1 at 0:06 – 0:20.) At one point, Defendant reclaims possession of the rifle, presses the rifle against his chest while it is pointed upward, then begins talking to the store clerk at the cashier counter. (Government Exhibit 2 at 4:30 – 4:40; Government Exhibit 1 at 4:30 – 4:36.)



Defendant speaking to store clerk while
holding the rifle (Government Exhibit 1 at 4:34.)

After briefly speaking to the clerk, Defendant points the weapon at the clerk. (Government Exhibit 2 at 4:38.)

---

[1] Video clips from the surveillance footage will be provided as Exhibits to the Court under separate cover (Exhibit 1, 2, and 3 clips.) The government may introduce portions of these clips as exhibits, if necessary, at the sentencing hearing.


Defendant lowering the rifle (Government Exhibit 1 at 4:36).
The barrel is circled in red.


Defendant pointing the rifle at a cashier (Government Exhibit 2 at 4:40).

Both store surveillance videos show the incident contemporaneously. Video shows one of Defendant's associates (the rifle's owner) intervene by attempting to grab the gun's handguard as he points the rifle. Defendant disregards her attempt, then exits the store. (Government Exhibit 2 at 4:40 – 4:42.)

Defendant proceeds to leave the store then points the rifle again, including at a car driving in the street. (R.28: PSR, PageID.64 – 65, ¶ 12.)

3



Defendant pointing the rifle after exiting the store (Government Exhibit 3 at 7:38).



Defendant pointing the rifle at moving car (Government Exhibit 3 at 7:41).

**Defendant Committed Felonious Assault.**

Defendant should receive an additional four offense levels based on his actions with the assault rifle. (R.28: PSR, PageID67, ¶ 22.) Mich. Comp. Laws § 750.82(1) prohibits felonious assault, also known as assault with a dangerous weapon, which provides: "a person who assaults another person with a gun . . . without intending to commit murder or to inflict great bodily harm less than murder is guilty of a felony." The elements of felonious assault are "(1) an assault, (2) with a dangerous weapon, and (3) the intent to injure or place the victim in reasonable apprehension of an immediate battery." *People v.*

4

*Nix*, 201 Mich. App. 195, 205 (2013). The government maintains, as described above, that Defendant pointed the assault rifle at the clerks. ("It seems reasonable to conclude that one who is confronted with a pointed gun would suffer a 'reasonable apprehension' notwithstanding the fleeting duration of the gunman's aim." *People v. McConnell*, 124 Mich. App. 672, 679; 335 N.W.2d 226 (1983)). But even if the Court disagrees, pointing a gun is not a prerequisite for finding that a felonious assault occurred. *Foulks v. City of Detroit*, No. 20-10302, 2022 WL 1143487, at *6 (E.D. Mich. Apr. 18, 2022) (citing *People v. St. Clair*, No. 331183, 2017 WL 2791466, at *1 (Mich. Ct. App. June 27, 2017) (finding that no Michigan legal authority supports "the proposition that felonious assault involving a firearm requires proof that the firearm was actually pointed at a victim."))

Here, Defendant pointed the assault rifle at two store clerks. Surveillance video clearly shows at least one clerk in Defendant's line of sight. The store clerk closest to the entrance reacts by yelling at Defendant as he points the rifle at him. (Government Exhibit 1 at 4:34 – 4:38.) Surveillance videos show the large capacity magazine attached to the firearm which police later determined was loaded. (R.28: PSR, PageID.66, ¶ 15.) Defendant's actions qualify as a felonious assault and his adjusted offense level should be 24. (*Id.*, PageID.67, ¶ 26.)

## § 3553(a) Factors

### A. Nature and Circumstances of the Offense

Defendant walked into a convenience store holding an assault rifle, pointed the weapon at store clerks, and then left. (*Id.*, PageID.64 – 65, ¶ 12.) After exiting the store, he pointed the rifle at a vehicle driving on the road approximately 100 yards away. (*Id.*) As

shown by Government Exhibits 1, 2, and 3, people are walking in and out of the store and cars are driving in the vicinity during the incident. His possession of the loaded rifle created danger to the public and a potentially deadly situation.

### B. History and Characteristics of the Defendant

Defendant's actions are more dangerous when considering his criminal history, which consists of convictions for theft, conspiracy to commit robbery, possession of controlled substances, and carrying a concealed weapon. (*Id.*, PageID.68 – 70, ¶¶ 34 – 38.) During two separate incidents in January and March of 2014, Defendant acted as a lookout during armed robberies and was sentenced to prison. (*Id.*, PageID.68 – 69, ¶ 35 – 36.) Those sentences did not deter him from committing the instant offense involving the firearm. In 2021, Defendant pleaded guilty to carrying a concealed weapon. (*Id.*, PageID.70, ¶ 38.) The court dismissed a charge of felon in possession of a firearm in that case. (*Id.*) He was still on parole at the time of this offense and was sentenced to several months in jail. (*Id.*)

Despite repeated consequences for possessing weapons or committing offenses involving weapons, Defendant continues to engage in that behavior. Indeed, the behavior seems to be escalating—whereas in the past he acted as a lookout or was found in possession of guns, now he is openly carrying an assault rifle in a threatening manner. To deter Defendant (as previous sentences have not) and others like him, this Court should impose a serious sentence.

## Conclusion

For the reasons set forth above, the government requests the Court fashion a sentence that reflects the threat Defendant poses.

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

Dated: June 18, 2024

/s/ *Jacob S. Metoxen*
JACOB S. METOXEN
Assistant United States Attorney
330 Ionia Ave. N.W.
Grand Rapids, Michigan 49503
(906)226-2500